St. Louis, San Francisco & Texas Railway Company v.
W. A. Bowles.

Decided November 17, 1910.

**1.—Charge—Burden of Proof.**

A charge throwing upon plaintiff the burden of proving every material fact necessary to make out his case should be assumed to have been understood by the jury as referring to such issues as were submitted to them by the court as necessary for that purpose.

**2.—Same—Proof of Negative.**

A direction, that, if the jury failed to find that any fact necessary to plaintiff's recovery had been established by a preponderance of the evidence, they should "find against the affirmative of such issue," was erroneous, or at least confusing and liable to mislead, as applied to the submission of this special issue as to the effect of a settlement and release, admitted but sought to be avoided by him:  Was such settlement "the free and voluntary act of said plaintiff?"  The burden was on plaintiff to prove that it was not; and this charge required, in the absence of proof, an answer against the affirmative proposition that it was.

**3.—Contract—Release of Damages—Fraud—Charge—Intoxication.**

The issue being whether a release of damages executed by plaintiff was not binding on him because he was (1) intoxicated; (2) or was induced to make it by fraudulent misrepresentations of the extent of his injuries; or (3) by promises of re-employment,—these questions should have been submitted, and not the question whether the settlement was his "free and voluntary act."

**4.—Same—Physician's Statement—Agency—Charge.**

Pending negotiations for settlement of his claim for· personal injuries, plaintiff, at defendant's suggestion, selected, and defendant procured, local physicians to examine and advise him as to the extent of his disability.  On his claim to repudiate the settlement thereafter made on the ground that he was misled by their representations, it was error to charge that the release was invalid if plaintiff was induced to execute it by false representations by physicians "who had examined him at the instance of appellant's claim agent."  To have this effect there must be fraud participated in by defendant.

5.—Pleading—Promise of Employment.

A plea that defendant procured a settlement by a fraudulent promise, not kept, to re-employ plaintiff in its service, was not sustained by proof of a promise to procure him a position with another employer.

6.—Contract—Intoxication.

The evidence is held insufficient to justify the submission of the issue of invalidity of plaintiff's contract of settlement because made when intoxicated. To have this effect it must be to such extent as to render him unable to understand the nature and consequences of the transaction; but a less degree may be considered in connection with the issue of fraud in procuring such contract.

7.—Charge—Weight of Evidence.

The submission of a special issue in the form: "Was the failure of the defendant's employes  *   *   *   to notify plaintiff of the approach of the second two cars, while plaintiff was on top of the first, negligence?" the question whether warning was given being controverted, was erroneous in assuming the absence of such warning.

Appeal from the District Court of Tarrant County.   Tried below before Hon. W. T. Simmons.

*Andrews, Ball & Streetman* and *Chapman & Lockett,* for appellant.

*Smith, Turner, Bradley & Powell,* for appellee.

WILLSON, Chief Justice.—November 19, 1908, appellee was in the employ of appellant as a brakeman.   While assisting other employees of appellant in switching box cars at Prosper, appellee fell from the top of one of the cars.   As a result of the fall he claimed to have suffered injury to his person.   He further claimed that he fell because of negligence on the part of such other employees, resulting in a collision between the car he was on and other cars.   He commenced and prosecuted a suit against appellant, in which he recovered a judgment for the sum of $4000 as his damages.   This appeal is from that judgment.

In bar of appellee's right to maintain his suit against it, appellant plead and proved that on March 15, after appellee fell from the car, in consideration of $450 paid to him, he had, by an instrument in writing of that date, released it from all liability on account of injuries suffered by him by reason of the accident.   In a supplemental petition appellee alleged that the release set up by appellant was not binding upon him, because at the time he executed it he was intoxicated, and on that account "in no condition mentally to understand what he was doing"; and, further, that the release was not binding upon him because he was induced to execute it by his reliance upon false and fraudulent promises as to future employment to be given to him by appellant, made by its claim agent, one Morrison, and false representations as to the extent of his injuries made by appellant's agents and by certain physicians employed by it to examine him for the purpose of determining the nature, etc., of such injuries.

At appellant's request the case was submitted to a jury for findings

by them on special issues. The instructions of the court in submitting such issues are made the basis of several assignments which will now be considered.

In the fourth paragraph of his charge the court instructed the jury that the burden was on plaintiff to establish by a preponderance of the evidence "every material fact necessary to make out his case, and as to any issue hereinafter submitted to you in charge necessary to establish plaintiff's cause, if you do not find and believe that the same has been established by a preponderance of the evidence, you will find against the affirmative of said issue."

The objection made to the instruction is that "it was assumed therein that the jury knew what issue should be answered in the affirmative to entitle the plaintiff to recover," and that, taken in connection with the first of the special issues submitted to the jury, it "in effect placed upon defendant the burden of establishing that the execution of the release" was the "free and voluntary" act of Bowles.

It should be assumed, we think, that the jury understood the issues necessary to be determined "to establish plaintiff's cause," to be those submitted to them by the court.

The first of said special issues, as stated in the court's charge, was as follows: "Was the settlement made between the plaintiff, W. A. Bowles, and the defendant railway company on the 15th day of March, 1909, by virtue of which said Bowles received $450 from defendant railway company, and executed the release introduced in evidence, the free and voluntary act of said plaintiff Bowles?" The execution by appellee of the release in question being admitted, the burden was on him to allege and prove the existence of facts rendering it invalid. If the effect of the instruction complained of was to relieve him of such a burden and to place same on appellant, it was erroneous; and materially so, in view of the fact that the issue stated was a sharply contested one.

The affirmative of the issue was that the settlement had been freely and voluntarily made by appellee. The negative was that it had not been so made. To "make out his case" the burden was on appellee to prove the negative of the issue, that is, that he had not freely and voluntarily executed the release. Yet the jury were told that if he failed to prove such negative they nevertheless must find in favor thereof; for they were specifically instructed to find against the affirmative of every issue submitted to them, "necessary to establish plaintiff's cause," if the same had not been established by a preponderance of the evidence. We think the instruction complained of, when considered in connection with the first of the special issues submitted, was positively erroneous; but, if it was not, when so considered it was so meaningless and confusing as very likely to have misled the jury in the consideration by them of the issue as to the validity of the release.

In his supplemental petition appellee alleged as reasons why he should not be held to be bound by the release he had executed, (1) that he was

so intoxicated at the time he executed it as to be "in no condition mentally to understand what he was doing"; (2) that he was induced to execute said release by representations he alleged to be false and to have been made to him at the instance of appellant by physicians it procured to make an examination of his person for the purpose, ostensibly, of determining the nature of his injuries, to the effect that "he was only slightly injured and would recover and could work"; and (3) that he was induced to execute said release by a promise fraudulently made to him by one Morrison, appellant's claim agent, that if he would execute it appellant would employ him as a conductor on one of its freight trains. Instead of submitting to the jury for their finding the issues as to the validity of the release made by appellant's answer and supplemental petition, the court submitted to them as an issue covering that feature of the case the question above set out, as to whether appellee had freely and voluntarily executed the release or not; and told them that they might, in determining such question, consider (1) whether appellee was so intoxicated "as not to know what he was doing" at the time he executed the release; (2) whether he was induced to execute same by representations as to his injuries made to him by physicians who examined him at the instance of appellant's said claim agent; and (3) whether he was induced to execute said release by reason of a promise made to him by said claim agent to secure for him employment as a brakeman on a passenger train of the Chicago, Rock Island & Gulf Railway Company or as a conductor on one of appellant's freight trains. It will be necessary to refer to only two of the many grounds urged by appellant in support of its contention that the instructions were erroneous, to show that the contention must be sustained. 1. Whether appellee freely and voluntarily executed the release or not, was not a proper test to apply in determining its validity. If at the time he executed it he was not so intoxicated as to be unable to understand the nature and consequences of the transaction (2 Page on Contracts, sec. 903; Wells v. Houston, 57 S. W., 584), and if he was not induced to execute it by the false and fraudulent representations and promise set out in the supplemental petition, made to him as alleged therein (Ry. Co. v. Titterington, 84 Texas, 223; Ry. Co. v. Smith, 98 Texas, 555; Ry. Co. v. Shuford, 81 S. W., 1196; Ry. Co. v. Huyett, 92 S. W., 454), the release was binding upon him, notwithstanding he may not have freely and voluntarily executed it. On the other hand, if he freely and voluntarily executed it, yet was induced to do so because he relied upon such false and fraudulent representations or promise, or because he was so intoxicated as not to understand the nature and consequences of the transaction, it was not binding upon him. In short, if he was entitled to have the release treated as without effect to bind him, it was either because of his incapacity at the time he executed it to make a contract, or because of fraud practiced upon him to induce him to execute it, and not because he had not freely and voluntarily executed it. A determination of the question as to whether he had freely and voluntarily executed

it or not would have left undetermined the question as to whether the release was binding upon him or not. 2. The instruction was erroneous in that it authorized the jury to find against appellant on the issue as to the validity of the release, if they believed appellee was induced to execute same by false representations as to his physical condition made to him by physicians named in the instruction, who had examined him at the instance of appellant's claim agent. It was shown that appellee had been operated upon for a hernia, which he claimed to have suffered as a result of the fall from the car, and that at the time the negotiations which were concluded by the execution of the release were being carried on, was not satisfied that the operation had been a successful one. There was evidence tending to show that agents of appellant engaged in conducting the negotiations suggested to him that he select any two of the physicians then practicing in Fort Worth to make, at appellant's expense, an examination of his person to determine whether such operation was a successful one or not, and that from a number of physicians named to him he chose Drs. Kibbie and Chilton, two of three physicians named in the instruction, to make the examination; that said two physicians so selected were at once, by telephone, requested to come to the place where appellee and appellant's agents were; that they came as requested, made the examination, and after making it made the statements charged to have been false and to have induced appellee to execute the release. There was no testimony showing Drs. Kibbie and Chilton to have been in any way connected with appellant, or to have had any communication with its agents in regard to appellee or his injuries, before they were requested as stated to make the examination. In Gulf, C. & S. F. Ry. Co. v. Huyett, 99 Texas, 630, 92 S. W., 455, the Supreme Court said: "If it were shown that defendant or its claim agent used the physician as an instrument to deceive plaintiff as to his condition in order that an advantageous settlement might be made, or that the claim agent and the physician acted together in so procuring the release, the contract would be affected by the physician's representations as fully as if he had been the only agent employed in the transaction," resulting in the execution of the release. If it should be conceded that the testimony in the record made an issue as to whether Drs. Kibbie and Chilton were used by appellant's claim agent as instruments to deceive appellee, or that they acted together in procuring appellee to execute the release, certainly the court had no right to assume, as he did in his instruction to the jury, the affirmative of such issue to be true. In this respect the charge of the court clearly was on the weight of the evidence.

In view of the fact that the judgment will be reversed and the cause remanded for a new trial, we think it proper, with reference to that portion of the instruction in question, which authorized the jury to consider in determining the issue as to the release whether appellant had promised to secure employment for appellee as a brakeman on a passenger train of the Chicago, Rock Island & Gulf Railway Company

or not, to call attention to the fact that the pleading on the part of appellee did not authorize the submission of such an issue. The employment which appellee alleged was promised to him and induced him to execute the release, was to make him a conductor on one of appellant's freight trains. We think it also proper to say that, if the testimony on another trial should be the same, an issue as to a right on the part of appellee to avoid the legal effect of the release because he was at the time he executed it so drunk as to be incapable of binding himself by a contract then entered into, should not be submitted to the jury. The rule seems to be that "before adjudication as an habitual drunkard, a person cannot escape his liability on a contract on the mere ground that he was intoxicated when he executed it, unless he can show that at the very moment of execution he was so intoxicated that he was unable to understand the nature and consequences of the transaction." 2 Page on Contracts, sec. 903; Wells v. Houston, 57 S. W., 584. In the case just cited the court said that to avoid a contract on the ground of drunkenness, "the obligor must have been so drunk as to have dethroned reason, memory and judgment, and impaired his mental faculties to an extent that would render him *non compos mentis* for the time being." The testimony in the record affirmatively indicates, we think, that appellee was not so intoxicated at the time he executed the release as to be within the rule stated. The fact, however, that he was intoxicated, if he was, might be entitled to consideration in connection with other issues arising with reference to the release. "A less degree of intoxication than that described," says Mr. Page, "may serve as a basis for avoiding contracts, if the drunkenness was caused by the adversary party, or if without causing the intoxication he took an unfair advantage of it. In such a case it is sufficient ground for avoiding the contract if the intoxication was the means by which the drunken person was deceived and misled to his prejudice. These cases do not involve questions of capacity, but of fraud and undue influence." 2 Page on Contracts, sec. 905.

The third of the special issues submitted to the jury was as follows: "Was the failure of the defendant's employees, Tucker and other members of the crew of the train upon which plaintiff was a brakeman, to notify plaintiff of the approach of the second two cars, while plaintiff was on the top of one of the first cars," etc., negligence? We think the objection made to the manner of submitting this issue that it was on the weight of the evidence, in that it assumed that notice of the approach of the two cars referred to was not given to appellee, should be sustained. Whether he was notified of the approach of said two cars or not was a controverted question in the case. The witness Earl testified that as the cars which collided with the one appellee was on approached same he "hollered out to him to look out there, they are going to hit."

The assignments which attack the judgment on the ground that the evidence was insufficient to support a finding of negligence on appellant's part, and on the ground that it is excessive, are overruled, as is

the assignment presenting the contention that the evidence showed conclusively that the injury, if any, suffered by appellee was due to a risk assumed by him.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*